IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>VINCENT LEE BELL,<br><br>Defendant. | CR 24-168-BLG-SPW<br><br>ORDER DENYING MOTION TO WITHDRAW GUILTY PLEA |

Before the Court is Defendant Vincent Lee Bell's Motion to Withdraw Guilty Plea. (Doc. 61). Bell was indicted for one count of Possession with Intent to Distribute Methamphetamine (Count 1) and two counts of Distribution of Methamphetamine (Counts 2 and 3). (Doc. 10). There is also a Forfeiture Allegation in the Indictment for any property derived from or used in the offense, as well as for any firearms involved in the offense. (*Id.* at 3).

On October 31, 2025, Bell appeared before this Court with his attorney, James Reavis, and pursuant to the plea agreement, entered his guilty plea to Count 1 and pled true to the Forfeiture Allegation after an extensive plea colloquy on the record. (Docs. 47, 57). Bell filed the instant Motion on January 30, 2026, through his newly appointed attorney, Joe Zavatsky. He asserts that his former counsel, Mr. Reavis, coerced him into pleading guilty and failed to investigate the case, leaving him

1

subject to a firearm enhancement to which he never admitted guilt. (Doc. 61-1 at 3). Bell's sentencing hearing is set for April 23, 2026. (Doc. 59).

Having reviewed the Motion, the Government's response, the plea agreement, and the transcript of the plea hearing, the Court finds Bell's argument unconvincing and contradictory to his sworn testimony.

## I.    Legal Standard

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "[T]he decision to allow withdrawal of a plea is solely within the discretion of the district court." *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003). The defendant bears the burden of establishing a fair and just reason for withdrawal, *see* Fed. R. Crim. P. 11(d)(2)(B); however, the court applies the standard liberally, *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005).

## II.   Discussion

### A.    *Necessity of a Hearing*

Bell does not specifically request a hearing on his Motion, and the Court finds that an evidentiary hearing is not necessary. (*See* Doc. 61 at 2 (stating that "[a]n evidentiary hearing . . . may be helpful . . . [i]f the Court determines a hearing is necessary")).

2

The Ninth Circuit reviews a denial of an evidentiary hearing for abuse of discretion and has found that no hearing is necessary on a motion to withdraw a guilty plea where the defendant's new allegations were answered "[i]n all significant respects" during prior proceedings. *United States v. Erlenborn*, 483 F.2d 165, 167–68 (9th Cir. 1973). A defendant is not entitled to a hearing if the facts alleged are "contradicted by the record," *United States v. Crooker*, 729 F.2d 889, 890 (1st Cir. 1994), or the court adequately inquired into the voluntariness of the plea, *cf. United States v. Caro*, 997 F.2d 657, 659–60 (9th Cir. 1993) (remanding for a full hearing on defendant's motion to withdraw his plea where the court did not know that defendant was a party to a "package[-]deal plea agreement" and therefore did not engage in a "more careful examination" of voluntariness).

Here, a hearing on the Motion is not necessary because Bell's current allegations for withdrawing his guilty plea were addressed in all significant respects during the change of plea colloquy. The 56-page transcript of the hearing, containing his sworn statements made under oath and penalty of perjury, furnishes a full and complete record illustrating Bell's thoughts, concerns, and inquiries on the topics he now alleges warrant a withdrawal of his plea. Bell offers nothing to suggest that a hearing will aid the Court's disposition of the Motion to Withdraw and therefore, the Court resolves the Motion in this Order.

B.   *Motion to Withdraw Guilty Plea*

As stated above, a defendant may withdraw a guilty plea after a district court accepts the plea but before sentencing if "the defendant can show a fair and just reason for requesting withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Ortega-Asciano*, 376 F.3d 879, 883 (9th Cir. 2004).

When the record reflects that the defendant's plea was knowing and voluntary and made with full understanding that the district court was not bound by any sentencing agreement, the court does not abuse its discretion in refusing to allow withdrawal of the plea. *United States v. Garcia*, 909 F.2d 1346, 1348–49 (9th Cir. 1990). "Statements made by the defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea." *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008). This allows a court to deny a request to withdraw when the reasons given contradict statements made during the plea colloquy and the defendant has simply changed his mind. *See United States v. Rios-Ortiz*, 830 F.2d 1067, 1070 (1987).

Here, Bell claims that his former attorney, Mr. Reavis, coerced him into pleading guilty by: (1) calling him daily until he signed the plea agreement and

warning that the Government would file a superseding indictment; (2) failing to properly investigate the case or prepare for trial; and (3) leaving him exposed to a gun enhancement for conduct to which he never admitted guilt. (Doc. 61-1 at 3). The extensive discussion during the plea hearing belies Bell's allegations and therefore, his Motion fails.

First, Bell's claim that he signed the plea agreement due to pressure or coercion by counsel is contradicted by his sworn testimony during his plea hearing. Bell affirmatively acknowledged that no one had "promised [him] that [the Court] would impose a certain sentence in exchange for [his] plea of guilty" and that no one had "forc[ed him] or . . . threatened [him] in any way to get [him] to plead guilty." (Doc. 57 at 32–33). He acknowledged that he had discussed the case with Mr. Reavis, and that Reavis explained the facts the Government needed to prove for a conviction, reviewed the evidence against him, and outlined available defenses. (*Id.* at 14–15). Even when Bell hesitated in answering the Court's questions, the Court paused, and informed Bell that "[he did not] have to say yes [to the Court's questions] if [he did not] think the answer [was] yes." (*Id.* at 16). Bell confirmed he understood and continued with the proceeding. (*Id.*). Considering the discussion and Bell's sworn statement that he was not coerced into the plea agreement, Bell's belated allegations to the contrary are contradicted by the record and remain unsubstantiated without newly discovered evidence or other intervening

circumstances. Bell is therefore not entitled to withdraw his guilty plea under this claim.

Second, Bell's claim that Mr. Reavis failed to properly investigate the case is also unsupported by his sworn testimony, as follows:

> THE COURT: Did [Mr. Reavis] investigate your case to your satisfaction?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Are you satisfied with [Mr. Reavis's] representation and advice?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Again, I'd appreciate a yes.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Thank you. Do you need any more time to talk with Mr. Reavis before we proceed?
>
> THE DEFENDANT: No.

(*Id.*). Once more, Bell's belated and nondescript post-plea allegation that his decision was driven by Mr. Reavis's failure to investigate or prepare for trial is not credible, is unsupported by any newly discovered evidence, and is contradicted by the record. Bell is therefore not entitled to withdraw his guilty plea under this claim.

Finally, Bell's claim that he faces punishment for a firearm enhancement he did not admit guilt to is likewise without merit and unsupported by record. "[I]t is well established that an erroneous prediction by a defense attorney concerning

6

sentencing does not entitle a defendant to challenge his guilty plea." *Garcia*, 909 F.2d at 1348. Nevertheless, the subject of Bell's current allegation was discussed at length at the plea hearing. When asked whether the plea agreement constituted the "whole agreement" with the Government, Bell and Mr. Reavis discussed off the record. (Doc. 57 at 22–23). Mr. Reavis then addressed the Court.

> MR. REAVIS: All right. Your Honor, my client had a question that we thought maybe you can provide some guidance on.
>
> THE COURT: Okay.
>
> MR. REAVIS: As you know, you asked: Does this plea agreement constitute the entire agreement and that there are no side deals. So by this plea agreement, it is my client's and my impression that the government cannot then file a new charge of the same facts like something involving a gun, for example.
>     But I did tell my client the plea agreement is silent on the sentencing guideline recommendations which are drafted by the probation officer, and, you know, there was concern that perhaps the officer might look into the case and find a sentencing enhancement that we don't agree with.
>     And so what I'm trying to advise my client, that if he pleads guilty, this will be the only charge that he faces, but that the PSR writer will have to do a report. They may recommend a sentencing enhancement, they may not, and I'm trying to assure him that that is not a side deal; it is just how the federal process works.
>     So I guess my client wants to ask—I don't think my client fully appreciates how the sentencing—the PSR sentencing writing process works and how there could be sentencing enhancements that are suggested . . . for your consideration.

(*Id.* at 23–24).

In response, the Court described the sentencing guidelines, and how the Court makes a determination within those guidelines. (*Id.* at 24–25). The Court went on

7

to describe how the presentence author calculates the guideline range. As for the base offense level, the dialogue continued:

> THE COURT: And I can't tell you what that number is, but she will—she'll pick a number that's supported by the evidence in the case. And then if there are factors that would qualify as enhancements, and what that means is that they [sic] are factors, like for example, if you possessed a firearm in connection with possessing the methamphetamine with intent to distribute; then two points could be added. That's what we call an enhancement.
>
> . . . .
>
> Anyway, once we either add these enhancements in that apply or subtract them, then we get to an adjusted offense level. But prior to sentencing if, for example, there was an enhancement, an addition made to the base offense level by the presentence author, Mr. Reavis could object to that.
> And he could make an argument to the Court that that enhancement should not be applied, that the facts and evidence don't support it; and ultimately, I would rule on that at your sentencing hearing.
>
> . . . .
>
> You understand that?
>
> THE DEFENDANT: Yeah—yes.

(*Id.* at 26–27).

The Court then explained how the presentence author would determine Bell's criminal history category and he acknowledged that he understood the process. (*Id.* at 28–30). After the Court circled back to the guideline range, Bell acknowledged he had no further questions. (*Id.* at 31–32). In light of the discussion about the

8

process of federal sentencing, including how the presentence author accounts for enhancements when there is evidence of a firearm involved, the Court does not find Bell's current allegation credible. The Court declines to credit Bell's unsubstantiated arguments contained in the Motion over his prior sworn testimony.

Considering there were no inadequacies in Bell's Rule 11 plea colloquies and that his current claims are contradicted by his sworn statements, the Court finds that his guilty plea was entered knowingly and voluntarily. The Court also notes that Bell waited approximately three months before seeking to withdraw his plea, which significantly undermines the credibility of his request. *See e.g., United States v. Catchings*, 708 F.3d 710, 718 (6th Cir. 2013) (two-month delay weighed against defendant's motion to withdraw). This lapse of time, coupled with the absence of newly discovered evidence or other intervening circumstances, reinforces the Court's determination that Bell's Motion must be denied.

### III. Conclusion

For the reasons stated, Bell's Motion to Withdraw Plea of Guilty (Doc. 61) is DENIED.

DATED this 24th day of February, 2026.

*[signature]*
SUSAN P. WATTERS
United States District Judge